# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Rose Marie Cooper, Respondent.

Appellate Case No. 2017-001452

---

Opinion No. 27777
Submitted February 23, 2018 – Filed March 14, 2018

---

## PUBLIC REPRIMAND

---

John S. Nichols, Disciplinary Counsel, and Sabrina C.
Todd, Assistant Disciplinary Counsel, both of Columbia,
for Office of Disciplinary Counsel.

Rose Marie Cooper, of Anderson, *pro se*.

---

**PER CURIAM:** In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). In the Agreement, respondent admits misconduct and consents to a confidential admonition or public reprimand. As a condition of discipline, respondent agrees to complete the Legal Ethics and Practice Program Ethics School, Trust Account School, and Law Office Management School within one year of being disciplined. She also agrees to pay the costs incurred in the investigation of this matter by ODC and the Commission on Lawyer Conduct within thirty days of being disciplined. We accept the Agreement and issue a public reprimand. The facts, as set forth in the Agreement, are as follows.

## Facts and Law

## Matter A

Respondent withdrew $70,000 in retainer fees for three Chapter 11 bankruptcy cases post-petition without seeking or receiving approval from the bankruptcy court in violation of South Carolina Local Bankruptcy Rule 2016-1 and Rule 3.4(c), of the Rules of Professional Conduct, Rule 407, SCACR.  Citing this violation, as well as other grounds, the bankruptcy court denied respondent's *nunc pro tunc* applications for approval of fees and ordered her to disgorge all fees she collected in the three cases.  The court permitted respondent to repay the fees over a forty-five month period.

Several months later, the bankruptcy trustee sought to have respondent sanctioned and held in civil contempt for failing to comply with terms of the repayment plan.  Instead, the bankruptcy court issued a new order relieving respondent from making further disgorgement payments for eighteen months in exchange for her agreement not to file any new bankruptcy cases during the same period.  If respondent wished to resume a bankruptcy practice after eighteen months, she would be required to file a pleading stating her intent to resume practice and reaffirming the disgorgement payment plan.  The affected clients were given notice of the revised order and did not object.  Respondent has not sought to resume her bankruptcy practice.

The investigation into this matter revealed respondent did not maintain a receipt and disbursement journal, client ledgers, or reconciliation reports for her trust account as required by Rule 1 of Rule 417, SCACR, and that she commingled personal funds with funds belonging to her clients in violation of Rule 1.15(a), RPC.  However, ODC found no evidence respondent misappropriated client funds.  Respondent has ceased operating a trust account and the firm where she works as a contract attorney handles all transactions requiring funds to be held in trust.

Respondent's conduct in this matter also violated Rules 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of the tribunal) and 1.15(a) (a lawyer must hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property; funds must be kept in a separate account; complete records of such account funds must be kept by the lawyer in compliance with Rule 417, SCACR).

**Matter B**

This matter arises from a complaint filed by respondent's now-deceased ex-husband concerning respondent's involvement in criminal charges against her two former stepdaughters, Michelle and Sherry. Numerous fraudulent check warrants were issued against Michelle in five counties in South Carolina in 2001. She was arrested in 2014, while living in another state. Sherry called respondent seeking her assistance and admitting she, not Michelle, was responsible for the fraudulent checks. Sherry confessed that in 2001, she wrote nearly 100 bad checks on two checking accounts she fraudulently opened in Michelle's name. Respondent took a number of steps to advocate for Michelle, but never entered into a representation agreement nor made an official court or written appearance on Michelle's behalf. Respondent secured Sherry's on-the-record statement to persuade law enforcement and prosecutors of Michelle's innocence and negotiated the dismissal of warrants against Michelle in one county in exchange for payment of the face value of the checks. Once Michelle was released from jail, respondent continued to work on her behalf, researching and seeking expungement of her charges, searching for additional charges, and discussing her situation with prosecutors to prevent her from being arrested again.

Soon after Michelle was released, Sherry was arrested. Although respondent maintains she never agreed to represent Sherry, she did communicate with one circuit solicitor's office on Sherry's behalf and did accept funds from her ex-husband which he characterized as payment for Sherry's representation. Sherry wrote to respondent from jail, noting her father hired respondent to represent her. Respondent also wrote to Sherry twice while she was in jail, updating Sherry on her efforts to discover and resolve all warrants against Michelle and her communications with prosecutors on Michelle's behalf. Respondent did not dispute the claim that she was representing Sherry and instead offered her information and advice an attorney might offer her client. Respondent mentioned the details of her communications with one solicitor about Sherry's pending charges and numerous mitigating circumstances. Respondent told Sherry the solicitor was going to try to aggregate her charges from the various counties, but that Sherry needed "to settle in and make the best of the situation" in the jail where she was incarcerated. In both letters, respondent promised to provide Sherry with future updates. In the second letter, respondent addressed Sherry's complaints about the length of her incarceration and encouraged her to be realistic, warning her that she was facing a large number of felony charges without the ability to make restitution. Respondent explained while she could not predict how a judge would view the case, she assured Sherry she was making sure all of the warrants

were accounted for and kept talking to the solicitor in an effort to move the case through the system. Further, two of the prosecutors with whom respondent dealt believed respondent was representing Sherry and Michelle. Shortly after the second letter, respondent's ex-husband wrote respondent a letter terminating her representation of Sherry.

While Sherry was incarcerated, Michelle agreed to care for Sherry's minor daughter, but later left the child at the home of respondent's daughter, Erica. Erica and her husband decided to seek temporary custody of the child and hired Attorney A, who also worked as an independent contractor at the firm where respondent performs freelance work. Attorney A was unaware of respondent's involvement in Sherry's criminal charges and appeared in court on behalf of Erica and her husband. The court disqualified Attorney A at the request of respondent's ex-husband and Sherry based on respondent's representation of Sherry on the criminal charges.

Through her actions and communications, respondent represented Michelle and Sherry simultaneously even though she did not make a formal appearance on behalf of either woman and did not consider herself Sherry's attorney. There was a significant risk that her representation of either woman would be materially limited by her representation of the other and therefore her representations constituted a concurrent conflict of interest under Rule 1.7(a), RPC. Respondent did not attempt to secure Sherry's informed consent to the conflict but now recognizes that because of the nature of the criminal allegations, the women were legally at odds with one another and the conflict was not permissible even with consent. *See* Rule 1.7(b), RPC (permitting affected clients to give informed consent to some conflicts of interest but not where the representation involves an assertion of a claim by one client against another client represented by the lawyer in the same matter). Respondent also did not have her representation of Sherry or Michelle noted in the firm's computerized conflicts system and therefore deprived Attorney A of the opportunity to realize the potential conflict of interest before he accepted Erica as a client.

In addition to violating Rule 1.7, RPC, as set forth above, respondent has violated Rule 8.4(e), RPC, which states "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."

Respondent admits her conduct in both matters constitutes grounds for discipline under Rule 7(a)(1), RLDE (it shall be a ground for discipline for a lawyer to violate or attempt to violate the Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of lawyers).

## **Conclusion**

We find respondent's misconduct warrants a public reprimand. Accordingly, we accept the Agreement and publicly reprimand respondent for her misconduct. Within thirty days of the date of this opinion, respondent shall pay the costs incurred in the investigation of this matter by ODC and the Commission on Lawyer Conduct. Respondent shall complete the Legal Ethics and Practice Program Ethics School, Trust Account School, and Law Office Management School within one year of the date of this opinion.

**PUBLIC REPRIMAND.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**